UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITI LAVEA,<br><br>       Petitioner,<br><br>   v.<br><br>WOODARD, warden,<br><br>       Respondent. | No. C 06-2123 MHP (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Titi Lavea, a prisoner at the Kern Valley State Prison, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A.   The Crimes

Titi Lavea was convicted of numerous crimes in a June 2003 jury trial in San Mateo County Superior Court for events that occurred in February-March 2002. He was convicted of theft of a firearm, possession of a firearm by a felon, evading a police officer, 3 counts of carjacking, vehicle theft, robbery, possession of stolen property, first degree burglary, attempted felony escape, and felony destruction of prison property. His federal habeas petition challenges the sufficiency of the evidence to support one carjacking conviction, the evading a police officer conviction and the attempted felony escape conviction. The court therefore only discusses those three crimes and convictions.

1.   <u>Carjacking (Cal. Penal Code § 215(a)) - Count 4</u>

On the afternoon of February 28, 2002, Carol Bliss parked her Mercedes 300 SE in the Office Depot parking lot on El Camino Real in Sunnyvale. Bliss noticed a gray van parked to the left of her. A man she identified as defendant was talking on a cell phone while standing next to the van. Defendant then placed his hand on her car door, opened it and said, "Give me the key." Defendant's eyes were "very droopy," and Bliss thought he "looked like he was on something." Bliss testified that she was afraid defendants wanted her or "the car or both." She "didn't want" to give defendant the key to the Mercedes, but stated, "I just knew I better do that." Defendant got into to the driver's seat of the Mercedes, backed up, and drove away. Bliss ran after the car "for a few minutes," but gave up when "[i]t was gone." She testified that she was both afraid and angry.

Cal. Ct. App. Opinion, p. 3.

2.   <u>Evading A Police Officer ( Cal. Veh. Code § 2800.2) - Count 9</u>

On March 1, 2002, Lavea and James Petelo drove the Mercedes stolen from Carol Bliss the previous day and pulled up next to a Cadillac limousine parked in the rear of a gas station. They robbed the limousine driver and carjacked the Cadillac. Petelo drove away in the Mercedes and Lavea drove away in the Cadillac. The robbery occurred at about 5:00 p.m. Two hours later, the Mercedes was spotted by police, who gave chase and eventually caught James Petelo.

Concurrently, San Mateo Police Lieutenant Bill Pollett observed the white Cadillac stopped in a "dirt strip" off the paved road under the Highway 92 overpass near the Highway 101 junction, "with the headlights off." Suddenly, the headlights of the Cadillac "came on and the vehicle accelerated rapidly." The Cadillac entered the 101 freeway southbound, which caused other cars to skid and spin. Lieutenant Pollett turned on his emergency lights and siren, and accelerated after the Cadillac. Pollett reached a speed of 95 to 100 miles per hour in heavy traffic on the freeway, and was able to maintain "visual sight on the vehicle," but "couldn't seem to gain any ground on him." Pollett decided that the speed of the chase was "excessively dangerous to the public" under the circumstances, so he "discontinued the pursuit" near the Whipple Avenue off-ramp in Redwood City, and turned off his lights and siren.

Cal. Ct. App. Opinion, p. 5.

Other officers from another police department saw the Cadillac just after lieutenant Pollett terminated his pursuit. They pursued at high speeds further south on the freeway and followed the Cadillac as it exited the freeway and drove into a residential area in East Palo Alto. Lavea ran away from the car. Police chased him on foot but he evaded them. Houses were evacuated and the area searched. Lavea eventually was found hiding in one of the evacuated houses early the next morning. He was arrested and taken to jail. <u>Id.</u> at 5-6.

3. <u>Attempted Escape By Force (Cal. Penal Code § 4532(b)(2) - Count 1</u>

Following his arrest defendant was incarcerated in the Maguire Correctional Facility. On the afternoon of March 29, 2002, a correctional officer undertaking a "security check on the perimeter of the building" heard a "very loud banging noise coming from a window" in the upper level of the housing wing occupied by defendant. After the noise was "isolated" to defendant's cell, an emergency response team entered defendant's cell to remove and transfer him.

An investigation of defendant's cell revealed that a metal shelf had been partially detached from the cinder block wall and covered with a newspaper. A corner of the shelf had been sharpened and bent. A "golf ball size hole or shattering" was found in the glass pane of the cell security window, which measures three to four inches wide by ten feet long. Two layers of plastic "security film" that surround the glass were also cracked, but a third layer remained intact and the glass was still connected to the plastic film. Most of the caulking around the window of defendant's cell had also been removed and replaced with "a combination of toothpaste and toilet paper stuffed between . . . the window and the concrete" wall. A gap had thus been created between the concrete and the edge of the window.

Strips of bed sheets found in the cell under defendant's bed were "knotted together to make one continuous rope, 46 to 47 feet in length. Also discovered was a book connected to the end of strips of bed sheets "tied together to make one long cord, or string, or rope." The rope made from the strips of sheets and weighted by the book was capable of being lowered through a hole in the window to the street below the cell, where "someone below could attach additional tools" or contraband to be "reeled back into the cell" for use to "take the window out." Toilet paper had been placed on the "speaker section of the intercom" system to "muffle any sounds" coming from within defendant's cell.

Cal. Ct. App. Opinion, pp. 6-7.

B. <u>Procedural History</u>

As mentioned earlier, Lavea was convicted in San Mateo County Superior Court of theft of a firearm, possession of a firearm by a felon, evading a police officer, 3 counts of carjacking, vehicle theft, robbery, possession of stolen property, first degree burglary, attempted felony escape, and felony destruction of prison property. Various sentence enhancement allegations were found true, i.e., that a principal was armed with a firearm for some of the crimes, that Lavea personally discharged a firearm as to some of crimes, and that Lavea had suffered prior serious felony convictions and a prior prison term. On July 28, 2003, he was sentenced to a total of 185 years to life in prison. This sentence included 27 years to life for the carjacking in count 4, 25 years to life for the evading a police officer in count 9, and 25 years to life for the attempted escape by force.

Lavea appealed. The California Court of Appeal affirmed the conviction and the California Supreme Court denied his petition for review. He then filed this action, in which he asserted four federal constitutional claims. Respondent filed a motion to dismiss on the ground that state judicial remedies had not been exhausted as to one of the claims; Lavea chose to delete the unexhausted claim and proceed with the remaining three claims. Respondent then filed an answer to the petition. Lavea did not file a traverse and the deadline by which to do so has long passed. The matter is now ready for consideration on the merits of the three remaining claims.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in San Mateo County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the three remaining claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

4

as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

## DISCUSSION

In his federal petition for writ of habeas corpus, Lavea asserts that his right to due process was violated because the evidence was insufficient to support the verdict on three counts. He makes three very specific insufficient evidence claims. He contends there was insufficient evidence of fear for the carjacking conviction, insufficient evidence that the police car was distinctively marked for the evading a police officer conviction, and insufficient evidence that his efforts had progressed far enough to amount to an attempted escape from the county jail. The California Court of Appeal rejected each of his claims in a reasoned decision.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt, but rather determines whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338. The "prosecution need not affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court "'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record-- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326). Circumstantial evidence and inferences drawn from that evidence may be sufficient to

sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). Mere suspicion and speculation cannot support logical inferences, however. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-79 (9th Cir. 2005), cert. denied, 546 U.S. 1137 (2006) (granting writ where, after resolving all conflicting factual inferences in favor of prosecution, only speculation supported petitioner's conviction for first degree murder under a theory of aiding and abetting).

Under § 2254(d), a federal habeas court applies the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 (quoting 28 U.S.C. § 2254(d))

A.   Carjacking Conviction

Lavea contends that there was insufficient evidence that Carol Bliss' car was taken by force or fear. There was no evidence of the use of any force, so the focus is on the existence of evidence of fear.

The California Court of Appeal rejected the claim, finding that there was sufficient evidence that there was a taking by fear. The court looked to robbery cases for guidance because, like carjacking, robbery requires a taking "by force or fear" from the victim. Cal. Ct. App. Opinion, p. 14. The element of fear "'is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [her] property.'" Id. at 14 (quoting People v. Davison, 32 Cal.App.4th 206, 212 (Cal. Ct. App. 1995)). There need not be an express threat for the fear element to exist. Id. The evidence of Carol Bliss' fear "consisted of her testimony that after she parked her Mercedes defendant stood outside the car, then opened her driver's side door. Defendant appeared to Bliss to be under the influence of drugs. Without further elaboration defendant declared, 'Give me the key.' Bliss testified that she did not want to part with her car key, but was afraid of defendant and 'knew [she] had to.' She thought he wanted either her 'or the car, or both.'" Cal. Ct. App. Opinion, p. 15; RT 195-208.

> To prove the "'use of fear to facilitate the taking,'" the victim may "'explicitly testify that he or she was afraid,'" or "'there must be evidence from which it can be inferred that the victim was in fact afraid, and that such fear allowed the crime to be accomplished. [Citations.]   We think a brusque demand for keys by a man who has already forcibly opened the door of a parked car in which a smaller, unaccompanied woman is seated carries with it at least the manifest implied threat of harm if the victim fails to comply.  The victim's testimony that she relinquished the key due to her fear of harm from defendant was uncontradicted, and we believe that under the circumstances her fear was eminently reasonable.

Cal. Ct. App. Opinion, p. 15 (citations omitted).

The California Court of Appeal's rejection of the insufficient evidence claim was not an unreasonable application of, or contrary to, <u>Winship</u> and <u>Jackson v. Virginia</u>.

Lavea points to some circumstances that might suggest Bliss was not or should not have been fearful:  the incident occurred in the middle of the day in a crowded parking lot, he did not utter threatening words, Bliss ran after the car as he drove away, and Bliss testified she was angry as well as afraid.

However, other parts of Bliss' testimony show that Lavea did put her in fear.  Bliss had parked next to a van, which would have obscured the view of any bystander in the parking lot on the driver's side of the car.  As she was preparing to exit her car, Lavea approached, opened her car door and said, "Give me the key."  RT 198.  Being approached this way by a stranger "absolutely" concerned her.  RT 198.  She thought this stranger who had just opened her car door wanted her or the car or both.  When asked what she was afraid of, Bliss said, "Him."  RT 199.  She gave him the key, and testified, "I just knew I better do that. I didn't want to, but I knew I had to."  RT 199; 207 (was concerned about her personal safety).  Lavea was not large, but he was bigger than Bliss.  RT 202-203 (she was 5'4" and weighed 111 pounds; he was about 5'7" and was of medium build).  In short, a stranger who was larger than her and looked like he was acting under the influence of drugs opened Bliss' car door and calmly demanded the key to the car.  Bliss gave the key to him because she was afraid.  Under the circumstances, her fear was not irrational or unreasonable.  See <u>Davison</u>, 32 Cal.App.4th at 216 ("extent of the victim's fear 'do[es] not need to be extreme for purposes of constituting robbery'").  Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential element of fear beyond a

7

reasonable doubt. It "makes no difference whether the fear is generated by the perpetrator's specific words or actions designed to frighten, or by the circumstances surrounding the taking itself." People v. Flynn, 77 Cal. App. 4th 766, 772 (Cal. Ct. App. 2000); see, e.g., Davison, 32 Cal.App.4th at 209-10 (instructional error was harmless because there was compelling evidence of fear where two robbers approached the victim while she was using an ATM at night with no one nearby and one of the robbers told the victim so "stand back" in a calm, but firm, voice that sounded like he "really meant business"); People v. Brew, 2 Cal.App.4th 99, 102, 104 (Cal. Ct. App. 1991) (robbery conviction upheld where robber came to the register area, the clerk moved away from the register in fear, and robber took cash, without touching or saying anything to the clerk).

Lavea suggests that Bliss could not have been afraid if she was angry enough to run after the car as he drove away. The emotions of anger and fear are not mutually exclusive and in fact may be common for victims of robberies and carjackings. Bliss even testified that she had both emotions. When asked, "Weren't you afraid, Ms. Bliss?" she responded, "Yes, but I was angry." RT 202. The evidence that Bliss ran after the car as Lavea drove away merely "permits an inference that [she] experienced emotions in addition to fear" but does not negate the evidence of fear. Davison, 32 Cal.App.4th at 217 (element of fear satisfied even though victim initially stepped back 20-30 feet, but then followed the robbers when they left the scene – running after them, cursing at them and calling for police help). This may have been a less frightening carjacking than many, but there was sufficient evidence that the car was taken by fear to support the verdict on the carjacking in count 4. There was not a due process violation.

B.  Evading A Police Officer Conviction

Lavea contends that his conviction for evading a police officer violates due process because the evidence was insufficient to show that the police car was "distinctively marked" as such.

California Vehicle Code § 2800.1 and § 2800.2 criminalize the act of evading a police officer's vehicle. Section 2800.1 is a misdemeanor. Section 2800.2 elevates the offense to a

1  felony if the person drives the vehicle "in a willful or wanton disregard for the safety of
2  persons or property."  For a person to be liable under § 2800.1, and therefore under §
3  2800.2, all of the following conditions must exist: "(1) The peace officer's motor vehicle is
4  exhibiting at least one lighted red lamp visible from the front and the person either sees or
5  reasonably should have seen the lamp. (2) The peace officer's motor vehicle is sounding a
6  siren as may be reasonably necessary. (3) The peace officer's motor vehicle is distinctively
7  marked. (4) The peace officer's motor vehicle is operated by a peace officer wearing a
8  distinctive uniform." People v. Hudson, 38 Cal.4th 1002, 1008 (Cal. 2006) (internal citation
9  and quotation marks omitted).  This case concerns the third condition.
10  In Hudson, the California Supreme Court considered the requirement that the officer's
11  motor vehicle be distinctively marked.  "[F]or purposes of section 2800.1, a pursuing peace
12  officer's vehicle is 'distinctively marked' if its outward appearance during the pursuit exhibits
13  in addition to a red light and a siren, one or more features that are reasonably visible to other
14  drivers and distinguish it from vehicles not used for law enforcement so as to give reasonable
15  notice to the fleeing motorist that the pursuit is by the police." Hudson, 38 Cal. 4th at 1010
16  (emphasis in source).  The red light and siren alone are not enough to satisfy the
17  "distinctively marked" requirement, as those are distinct and separate elements under the
18  statute. Id. at 1010.  Hudson also explained that the focus is on the vehicle, and one may not
19  look to the circumstances surrounding a chase to determine if the car was distinctively
20  marked because the statute "unambiguously refers only to the vehicle itself." Id. at 1009.
21  After discussing the elements of the crime, the Hudson court discussed a related instructional
22  error claim and explained that the phrase "distinctively marked" should be instructed upon
23  because its legal meaning was different from its meaning in common parlance: in common
24  parlance, the phrase "'distinctively marked,' when used to describe a police car, could include
25  such distinguishing features as a red light or a siren," and the statute required markings in
26  addition to those two features. Id. at 1012.  A vehicle is distinctively marked if it bears a
27  symbol or device that identifies it as a police officer's vehicle, but it is not necessary for it to
28  have an insignia or logo. People v. Estrella, 31 Cal. App. 4th 716, 722 (Cal. Ct. App. 1995);

9

1 Hudson, 38 Cal.4th at 1013.  In Estrella, the court found a car was distinctively marked as a
2 police vehicle where, in addition to red light and siren, it had wigwag lights (i.e., alternately
3 flashing on each side) and flashing blue and clear lights.  Estrella, 31 Cal. App. 4th, at 723;
4 see, e.g., id. at n.5 (declining to consider the presence of a push-bar on the front of the car
5 and spotlights on the side of the car as distinctive markings of a police car because of the
6 proliferation of push-bars on non-police vehicles and because a statute allows spotlights on
7 non-emergency vehicles); Hudson, 38 Cal.4th at 640-41 (although Crown Victoria model car
8 was a common police vehicle, the mere model did not make it a distinctively marked police
9 car).

10        In Lavea's case, San Mateo police lieutenant William Pollett testified about the vehicle
11 he was driving when he chased after the stolen Cadillac.

12     Q:    When you received [the radio dispatch of the stolen Cadillac], sir, were you in a police car?
13
14     A.    Yes, I was in a fully marked and equipped San Mateo police car.

15     Q:    The equipment, the emergency lights and siren, would you explain?

16     A:    Yeah.  The emergency equipment consists of red and blue flashing and levitating lights and a siren.

17 RT 700-701.

18        The California Court of Appeal determined that there was substantial evidence that
19 the vehicle was "distinctively marked" as a police vehicle. Cal. Ct. App. Opinion, p. 17.
20 First, an "inference from the officer's testimony that the vehicle was 'fully marked' is that it
21 bore some form of official police logo or insignia." Cal. Ct. App. Opinion, p. 17.  Second,
22 Pollett testified that he activated the vehicle's flashing and levitating blue lights, in addition
23 to the red light and siren. Third, Lavea's reaction upon seeing the police car indicated he had
24 reasonable notice that he was being pursued by a police car.  Id.

25        The third reason offered by the state appellate court was inadequate.  The
26 "distinctively marked" element cannot be satisfied by inferring from the defendant's behavior
27 that he recognized the car as a police car.  See Hudson, 38 Cal. 4th at 100-10, 1014.
28 However, even discarding that reason, the first two reasons mentioned by the state appellate

1 court show the evidence was sufficient.

2 Pollett testified that he was driving "a fully marked <u>and</u> equipped San Mateo police 3 car." RT 700-701.  He then explained that the "emergency equipment consists of red and blue 4 flashing and levitating lights and a siren."  RT 701.  Because he stated the car was fully 5 marked <u>and</u> equipped, and then described the equipment as consisting of the red and blue 6 lights and a siren, the marking was something other than the described equipment.  His 7 statement thus does not lend itself to an interpretation that the "marking" of the car consisted 8 of the lights and siren.  When lights and siren are excluded, the statement that the police car 9 was "fully marked" supports an inference that the car had some visible insignia and/or the 10 word "police" on its exterior.  <u>See</u> Cal. Ct. App. Opinion, p. 17.  The car also had a blue 11 flashing light, which also provided evidentiary support for it being distinctively marked as a 12 police car.  A rational trier of fact could have found Pollett's statement that he was in a "fully 13 marked" police car that had a blue flashing light (as well as a red light and siren) could have 14 found that the requirement that the police car be distinctively marked proven beyond a 15 reasonable doubt.

16 C. <u>Attempted Escape by Force Conviction</u>

17 Lavea contends that his conviction for attempted escape by force violates due process 18 because the evidence was insufficient to show that his efforts had progressed far enough to 19 amount to an attempt.

20 California Penal Code § 4532(b)(1)  provides in part: "Every person arrested and 21 booked for, charged with, or convicted of a felony . . . who is confined in any county or city 22 jail . . . who escapes or attempts to escape from a county or city jail . . . is guilty of a felony." 23 The offense requires an attempt to effectuate "an unlawful departure from the limits of an 24 inmate's custody" by force or violence.  <u>See</u>  <u>People v. Gallegos</u>, 39 Cal.App.3d 512, 515 25 (Cal. Ct. App. 1974).  The words "force" and "violence" are synonymous for this crime and 26 "mean any wrongful application of physical force against property or the person of another." 27 CALJIC 7.31; <u>see</u> <u>People v. Lozano</u>, 192 Cal.App.3d 618, 627 & n.8 (Cal. Ct. App. 1987).

28

In general, an attempt "consists of a specific intent to commit the crime, and a direct but ineffectual act done towards its commission. . . . Commission of an element of the underlying crime other than formation of intent to do so is not necessary." Cal. Ct. App. Opinion, pp. 18-19 (citations omitted). "When a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime [citation], and performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' [citation], the defendant may be convicted of criminal attempt." Cal. Ct. App. Opinion, p. 19 (quoting People v. Toledo, 26 Cal. 4th 221, 230 (Cal. 2001), and People v. Kipp, 18 Cal. 4th 349, 376 (Cal. 1998)). Mere preparation, such as planning or intention to engage in the crime, is not enough for an attempt. Cal. Ct. App. Opinion, p. 19.

The California Court of Appeal found adequate evidentiary support for the attempted escape conviction.

> The evidence persuasively proved that defendant proceeded well beyond the mere "preparatory" stage of his intended forcible escape. Defendant took affirmative action to initiate his plan. He not only broke a hole through the glass of the window, but also managed to remove nearly all of the caulking around the edge of the window. The integrity of the entire window and the gap around it were compromised by the removal of the caulking by defendant. He also created ropes from strips of bed sheets that were capable of being lowered to the street below. He may not have been able to fit through the four-inch window once it was detached, but his efforts may have eventually facilitated further removal of obstacles to a successful escape. And in any event, that the plan was poorly conceived and ultimately failed to come to successful fruition does not relieve defendant of his culpability for the attempt. [Citations.] The ultimate impossibility of the defendant to successfully escape does not preclude the commission of an attempt.

Cal. Ct. App. Opinion, p. 19-20 (citations omitted).

On the record, a rational trier of fact could have found proof beyond a reasonable doubt that Lavea had proceeded far enough in his efforts to escape to be guilty of an attempt. Lavea was in a cell with a window that looked out to the non-jail world. He had begun making a hole in the window, although he had not yet made it through the three layers of security film and glass before he was caught. See RT 680, 684, 691. It wasn't for want of effort that Lavea hadn't penetrated the window; his banging on the window was so loud that a correctional officer doing a perimeter check of the jail heard the very loud banging that was

12

loud enough to be heard above the traffic and outside noises. RT 669. Lavea also had been digging out the grout around the window frame, and had caused a gap between the edge of the cement and the edge of the window. RT 687. He had broken off a wall shelf and sharpened one of the corners of the shelf. RT 678. He also had taken steps to avoid detection: he put a substance made of toothpaste and toilet paper in place of the grout he had removed, and put wet toilet paper over the intercom to muffle any sounds in the cell if the control booth operator attempted to listen to him over the intercom. RT 686. He had made a rope 46-47 feet long from bedding and had a book with strips of bed sheets wrapped around it, apparently to be used as a weight for one end of the rope. RT 681-684. Detective Gonzales opined that Lavea could have lowered the rope and had someone send up additional tools or something to widen the hole in the window or to take the window out. RT 684, 688.

      Although Lavea might never have been able to create a hole wide enough for him to squeeze through, the impossibility of him succeeding in his escape efforts does not mean that he could not be liable for them. See Cal. Ct. App. Opinion, p. 19. Lavea had not made it very far in his escape efforts, but he was beyond merely preparing for the escape and had commenced doing the escape. He was working on causing an opening to the outside world and had made a rope to drop down to the ground to have someone send back tools to continue his work on the escape, or to send back some device to enable him to take out the window. He already had a tool in the sharpened shelf and already had begun progress in burrowing toward the perimeter of the jail as he had removed some caulking around the window to create a gap between the window and the concrete wall and had begun penetrating through the multi-layered window. On the evidence in the record, a rational trier of fact could find beyond a reasonable doubt that Lavea had taken a direct but ineffectual act toward escape from the jail and did so with the specific intent to escape from the jail. His conviction for attempted escape did not violate due process.

**CONCLUSION**

The California Court of Appeal's decision that there was sufficient evidence to support Lavea's convictions for the carjacking, evading a police officer, and attempted escape by force was not contrary to or an unreasonable application of clearly established federal law, as set forth by the U.S. Supreme Court. The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: April 9, 2008

Marilyn Hall Patel
United States District Judge